# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| LIBERTY INSURANCE UNDERWRITERS, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) No. 6:16-03324-CV-RK |
| v. | )<br>) |
| O.D. ANNE C. REAM, RHONDA OVERBY, | )<br>)<br>) |
| Defendants. | ) |

## PARTIAL ORDER ON MOTIONS FOR SUMMARY JUDGMENT REGARDING DUTY TO DEFEND

Now before the Court is Liberty Insurance Underwriters, Inc. ("Plaintiff")'s Motion for Partial Summary Judgment (doc. 65) and Dr. Anne C. Ream and Rhonda Overby (collectively, "Defendants")' Cross Motion for Summary Judgment (doc. 72). Plaintiff and Defendants seek summary judgment on Defendants' breach of contract and equitable garnishment counterclaims. (Docs. 65, 72.) After careful review, Plaintiff's Motion for Partial Summary Judgment as to the Duty to Defend (doc. 65) is **GRANTED**. At this time, the Court defers ruling on all other issues addressed in the motions for summary judgment.

## Statement of Facts

Dr. Ream purchased two insurance policies, one from State Farm Fire and Casualty Company ("State Farm") and one from Plaintiff. The State Farm Policy was a commercial general liability policy ("State Farm Policy") with Anne C. Ream as the named insured. (Docs. 1, 7.) Plaintiff's policy was a Healthcare Professional Liability Insurance Policy ("Policy") with Anne C. Ream as the named insured. (*Id.*) The facts relevant for this Order are as follows:

- **November 19, 2013**:
  - Rhonda Overby went to Ream Optometry for an eye exam and to pick-up her new eye glasses. Mr. Overby was seen by optometrist Dr. Pigg. Ms. Overby was

directed by a technician to sit in an exam chair to receive a peripheral eye exam but fell from the chair, sustaining injuries.[1] (Docs. 65, 72).

- **April 21, 2015**:
  - Ms. Ream's attorney, Charles Cowherd, wrote Plaintiff a letter demanding that Plaintiff pay its $1,000,000 Policy limits to settle the claim. (Doc. 92-1.) The letter included a brochure describing the accident and corresponding injuries and a copy the State Farm Policy. (*Id.*)

- **June 10, 2015**:
  - State Farm offered to pay its policy limits to Ms. Overby. (Doc. 92-3.)
  - Plaintiff denied coverage for Ms. Overby's claim and refused to pay the Policy limits. (Doc. 66-10.)

- **November 10, 2015**:
  - Ms. Overby filed a state court action against Dr. Ream and Ream Optometry ("State Action") seeking damages for injuries sustained. (Doc. 1-2.)

- **December 3, 2015:**
  - Dr. Ream's attorney, Charles Cowherd, sent Plaintiff a second letter demanding Plaintiff provide Dr. Ream with an unconditional defense of the case filed by Ms. Overby without any reservation of rights. The letter also included a copy of the State Action Petition. (Doc. 92-1.)

- **December 10, 2015**:
  - Dr. Ream's attorney, Charles Cowherd, spoke with Plaintiff's former Complex Claims Specialist, Holly MacDonald. (Doc. 91-2.) During this conversation, Mr. Cowherd told Ms. MacDonald that State Farm intended to pay its policy limits to settle the case. (*Id*.)

- **December 11, 2015**:
  - Rhonda Overby and Anne C. Ream, personally and on behalf of Ream Optometry, executed a RSMo § 537.065 agreement.[2] (Doc. 66-12.) The agreement required,

---

[1] Dr. Ream directed for all patients to receive a peripheral eye exam as a part of the operation of her business. (Doc. 73-2.)

[2] Under RSMo § 537.065, if an insurer refuses to defend an insured torfeasor, the insured tortfeasor is permitted to enter an agreement to limit recovery of damages to specified assets. *Peterson v. Discover Prop. & Cas. Ins. Co.*, 460 S.W.3d 393, 414 n.4 (Mo. App. 2015). The statute allows the insured tortfeasor

2

within ten days of its signing, that Anne C. Ream and Ream Optometry demand, in writing, that Plaintiff provide an unconditional defense. (*Id.*)

- **December 17, 2015**:
  - State Farm delivered payment of its policy limits to Ms. Overby in settlement of its claims before trial. (Doc. 91-3.)
- **February 3, 2016**:
  - Ream Optometry was dismissed from the State Action. (Docs. 66, 72.)
- **February 4, 2016**:
  - A bench trial was held in the State Action. (Doc. 66-1.) The state court entered judgment against Dr. Ream in the amount of $7,233,465.20. (*Id.*)

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

Under Missouri law,[3] insurance policies are contracts; therefore, the rules of contract interpretation apply. *Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 474 (Mo. App. 2013). "The interpretation of an insurance policy is a question of law." *Gohagan v. Cincinnati Ins. Co.*, 809 F.3d 1012, 1015 (8th Cir. 2016) (quoting *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999)). An insurance contract includes "the form policy, the declarations, and any endorsements and definitions." *Grable v. Atlantic Cas. Co.*, 280 S.W.3d 104, 107-08 (Mo. App. 2009) (citations omitted). "An insurance policy is designed to furnish protection, [and] it should be construed so as to accomplish that object." *Noll v. Shelter Ins. Co.*, 731 S.W.2d 393, 395 (Mo. App. 1987) (citation omitted). Terms are given their plain and ordinary meaning in the policy in a manner

---

and the claimant to agree that the insured will only be held liable to the insurance policy limits. RSMo § 537.065.

[3] Both parties and the Court agree that Missouri substantive law applies to the interpretation of the Policy.

3

consistent with the parties' reasonable expectations unless a word or phrase is clearly intended as a term of art. *Doe Run*, 40 S.W.3d at 474. "[A]bsent an ambiguity, an insurance policy must be enforced according to its terms." *Bush v. Shelter Mut. Ins. Co.*, 412 S.W.3d 336, 343 (Mo. App. 2013) (quoting *Long v. Shelter Ins. Co.*, 351 S.W.3d 692, 696 (Mo. App. 2011)). Finally, the insurance company bears the burden to show exclusions apply to bar coverage, and policy provisions that are designed to limit or restrict insurance coverage are construed against the insurance company. *Bush*, 412 S.W.3d at 339 (citation omitted).

**Discussion**

Generally, "[i]n determining whether a duty to defend exists, we [the Court] look at the duty as of the time the insured tendered the defense to the insurer." *FACE, Festivals and Concert Events, Inc. v. Scottsdale Ins. Co.*, 632 F.3d 417, 420 (8th Cir. 2011). If the pleadings and other facts known or reasonably ascertainable to the insurance company at the time the decision to defend is being made do not raise a claim arguably within the scope of coverage, the insurance company has no duty to defend the insured. *Id.*

Plaintiff maintains it had no duty to defend Dr. Ream because: (1) there was no claim arguably within the scope of coverage for Ms. Overby's injuries under the Policy; (2) even if there were such claims, Plaintiff was the excess insurer, thus any duty to defend Dr. Ream would not trigger until State Farm's policy was exhausted; and (3) the Policy excludes coverage for claims against Dr. Ream as a business owner or manager of Ream Optometry.

Regarding Plaintiff's excess insurer argument, Defendants assert, *inter alia*, that Plaintiff waived and should be estopped from asserting an excess insurer argument. The Court finds that Plaintiff did not waive and should not be estopped from asserting its excess insurer defense.[4]

---

[4] A party waives a right when a party's express or implied conduct demonstrates that party's intentional relinquishment of a known right. *Brown v. State Farm Mutual Auto. Ins. Co.*, 776 S.W.2d 384, 386-87 (Mo. banc 1989). Waiver is proper only when either of the following is present: "(1) an express waiver by the insurer or (2) conduct which clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right." *Id.*

To succeed on an estoppel theory, the insured must establish: (1) the insurer asserted one defense in denying coverage and later asserted an inconsistent defense to deny coverage, (2) the insured relied on the original defense asserted by the insurer, and (3) the insured suffered prejudice as a result of the reliance. *Brown*, 776 S.W.2d at 388. "Estoppel will not be lightly embraced in an insurance coverage case; it only has application when all elements thereof clearly appear." *Versaw v. Versaw*, 202 S.W.3d 638, 650 (Mo. App. 2006).

Because the Court finds Plaintiff's excess insurer argument to be dispositive as to Plaintiff's duty to defend, the Court need not address Plaintiff's scope of coverage and exclusion arguments.

To analyze Plaintiff's excess insurer argument, the Court must address the following: (1) whether the Policy's excess insurance clause applies; (2) if Plaintiff is an excess insurer, what action triggers an excess insurer's duty to defend; (3) whether Dr. Ream was required to provide notice to Plaintiff of such triggering action; and (4) whether such notice was provided.

Here, the Court finds State Farm was the primary insurer and Plaintiff was the excess insurer. State Farm agreed to defend against and cover Ms. Overby's claim. The State Farm Policy states that State Farm is primary in all but three circumstances, which are not applicable here. The Court will assume, without deciding, that the loss is also covered by Plaintiff's policy for the purposes of this Order. The Policy's excess insurance clause states that Plaintiff is an excess insurer if another insurance company covers the same loss at issue. The Policy also provides, "[w]hen this insurance is excess, the Company shall have no duty under this policy to defend any claim or Suit that any other insurer or self-insurer has a duty to defend." (Doc. 92 at 14.) Additionally, the Court finds State Farm elected to defend, and therefore, had a duty to defend. Accordingly, Plaintiff was an excess insurer and State Farm was primary.

Next, as an excess insurer, the Court considers if and when Plaintiff's duty to defend was triggered. Typically, an excess insurer's duty to defend begins only after the primary insurer's policy is exhausted. *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 251, 267 (Mo. App. 2017); *Liberty Mut. Ins. Co. v. Pella Corp.*, 650 F.3d 1161, 1173 (8th Cir. 2011) ("[a]n insurer that issued a true excess or umbrella policy is not liable for any portion of the loss until a primary insurer's limits has been exhausted") (citations omitted). "[A]n insurance policy is exhausted when the insured proves that claims . . . have been settled and full liability of the insurer discharged." *Waste Mgmt. of Minn. v. Transcon, Ins. Co.*, 502 F.3d 769, 773 (8th Cir. 2007) (quoting *Reliance Ins. Co. in Liquidation v. Chitwood*, 433 F.3d 660, 664 (8th Cir. 2006)). Additionally, an insurance policy's language determines when that policy is exhausted and when the insurer has no further obligations to its insured. *Nooter Corp.*, 536 S.W.3d at 267. Here, the State Farm Policy dictates that it is exhausted and incurs no further defense obligations when policy limits are "used up in the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses." (Doc. 66-8.) Missouri courts have held a primary policy to be exhausted when the primary insurer actually submits payment of its limits. *See Nat'l Beef*

5

*Packaging Co., LLC v. Zurich Am. Ins. Co.*, 336 S.W.3d 181, 187 (Mo. App. 2011) (exhaustion of a primary insurer's policy limits occurs when payment is actually delivered to the insured). State Farm, as primary insurer, delivered payment of its policy limits to Ms. Overby's attorney on December 17, 2015. Accordingly, the State Farm Policy was exhausted when State Farm paid its limits on December 17, 2015.

Finally, the Court considers whether Dr. Ream was required to provide notice to Plaintiff of exhaustion, and if so, whether such notice was provided. An insured must notify the insurer of a material change in circumstances. Allen D. Windt, Insurance Claims & Disputes § 4:8 (6th ed.) (noting that a duty to defend can come into existence after the insurer denies the claim, but the insured must notify the insurer of the change). The Policy's cooperation clause required Dr. Ream to provide notice to Plaintiff of "every demand, notice, summons or other process received by the Insured or Insured's representative." (Doc. 1-1 at 14). *See Safeco Ins. Co. of Am. v. Rogers*, 968 S.W.2d 256, 258 (Mo. App. 1998) (the insured violated the cooperation clause when it failed to forward an amended petition with a new cause of action to the insurer); *Dickman Aviation Services, Inc. v. U.S. Fire Ins. Co.*, 809 S.W.2d 149, 151 (Mo. App. 1991) (same).

While on December 10, 2015, Dr. Ream's attorney conveyed to Plaintiff that State Farm had agreed to pay its policy limits, it is uncontroverted that Plaintiff received no communication or formal notice that State Farm actually tendered payment of its policy limits on December 17, 2015, thereby exhausting its policy, until after the state court entered its judgment against Dr. Ream. The information Plaintiff received before December 17, 2015, regarding State Farm's intentions to pay its policy limits is insufficient notice of a material change in circumstances. *See National Farmers Union Standard Ins. Co., v. Souris River Tel. Mut. Aid Coop.*, 75 F.3d 1268, 1275 (8th Cir. 1996) ("Insureds are in a better position to know of changes . . . that may affect insurance coverage requirements; thus the law places the onus on insureds to inform their insurers of such changes"); *Inman v. St. Paul Fire & Marine Ins. Co.*, 347 S.W.3d 569, 580 (Mo. App. 2011) (an insurance company must be given notice of amended pleadings that would trigger an insurer's duty to defend, and the failure to provide this notice relieves the insurer's duty to defend). Dr. Ream was required to notify Plaintiff when State Farm exhausted its limits to hold Plaintiff liable for failure to defend. Plaintiff's failure to provide notice prejudiced Plaintiff because without such notice, Plaintiff had no knowledge of an affirmative duty to defend. *See R.G. Brinkmann Co. v. Amerisure Ins. Co.*, 2013 U.S. Dist. LEXIT 11575, at *4-5 (E.D. Mo. Jan. 29, 2013) (failure to

6

provide notice does not bar recovery against an insured unless the insurer is prejudiced by the failure). Accordingly, as a matter of law, Plaintiff cannot be liable for breach of the duty to defend.

## Conclusion

Accordingly, based on the foregoing, the Court **ORDERS** as follows:

(1) Plaintiff's Partial Motion for Summary Judgment as to the Duty to Defend is **GRANTED** (doc. 65), and

(2) The Court will address all other issues raised in the motions for summary judgment in a later order.

**IT IS SO ORDERED.**

                                                     s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 5, 2018